IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JASON HALSEY; DANIEL LEE; LILA BACKER; and MICHAEL McGARRY, | |
| Plaintiffs, | Case No. 6:24-cv-00649-MC |
| v. | OPINION AND ORDER |
| AIRBUS HELICOPTERS S.A.S.; AIRBUS HELICOPTERS, INC.; SAFRAN HELICOPTER ENGINES USA, INC.; GLOBAL MEDICAL RESPONSE, INC.; REACH AIR MEDICAL SERVICES, LLC; MED-TRANS CORPORATION; LIFEPORT, LLC f/k/a LIFEPORT, INC.; STARR ADJUSTMENT SERVICES, INC.; STARR ADJUSTMENT SERVICES, INC. d/b/a STARR COMPANIES; STARR UNDERWRITING AGENCY, INC. f/k/a STARR AVIATION AGENCY, INC.; STARR UNDERWRITING AGENCY, INC. d/b/a STARR COMPANIES; STARR INSURANCE HOLDINGS, INC. d/b/a STARR COMPANIES; STARR GLOBAL HOLDINGS AG d/b/a STARR COMPANIES; STARR INTERNATIONAL COMPANY, INC. a/k/a STARR INTERNATIONAL COMPANY AG d/b/a STARR COMPANIES; and STARR COMPANIES, | |
| Defendants. | |

1 – OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiffs' claims arise out of a helicopter crash and the subsequent investigation into its cause. Defendant Airbus Helicopters (the manufacturer of the helicopter) and Defendant Safran Helicopter Engines (the manufacturer of the helicopter's engine) filed motions to dismiss based on lack of personal jurisdiction. Def.'s Mot. Dismiss, ECF No. 60; Def.'s Mot. Dismiss, ECF No. 67; Def.'s Mot. Dismiss, ECF 70. Because those Defendants lack minimum contacts with Oregon, these motion are GRANTED.

Defendants Global Medical Response, Inc., Reach Air Medical Services, LLC, and MedTrans Corporation move to dismiss Plaintiffs' spoliation claims. Defs.' Mot. Dismiss, ECF No. 62. Because Plaintiffs' spoliation claims—even assuming the claims in theory may be viable and may be brought here under Oregon law—are premature, those claims are DISMISSED.[1]

## I. MOTIONS TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION

### BACKGROUND[2]

Plaintiffs Jason Halsey, Lila Backer, Daniel Lee, and Michael McGarry are residents of Oregon. FAC ¶¶ 1–4, ECF No. 35. Defendant Safran Helicopter Engines USA, Inc. (Safran) is a Delaware corporation with its principal place of business in Texas. *Id.* ¶ 26. Safran is registered to conduct business in Oregon and has a registered agent for service of process in Oregon. *Id.* Defendant Airbus Helicopters, Inc. is a Delaware corporation with its principal place of business in Texas. *Id.* ¶ 6. Defendant Airbus Helicopters SAS is a French corporation with its principal

---

[1] The Airbus and Safran Defendants also moved to dismiss Plaintiffs' spoliation claims. Because this Court lacks personal jurisdiction over those Defendants, the Court does not address their spoliation arguments (that are essentially identical to the arguments made by the Global Medical Response Defendants). The Starr Company Defendants raised similar arguments regarding Plaintiffs' spoliation claims. Mot. Dismiss, ECF No. 73. Because Plaintiffs voluntarily dismissed their claims against the Starr Company Defendants, that motion is DENIED as moot. Notice of Voluntary Dismissal, ECF No. 95.

[2] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations of material fact as true. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

2 – OPINION AND ORDER

place of business in France. *Id.* ¶ 5. Neither of the Airbus Defendants is registered to conduct business in Oregon, has offices in Oregon, or designs, manufactures, assembles, sells, or distributes helicopters or spare parts in Oregon. Cawyer Decl. ¶ 5, ECF No. 68; Gouraud Decl. ¶ 5, ECF No. 71.

Defendant Airbus Helicopters SAS sold the subject helicopter to Defendant Airbus Helicopters, Inc., who subsequently sold it to Defendant REACH Air Medical Services ("Reach") in January of 2019. Cawyer Decl. ¶ 7; Gouraud Decl. ¶ 7. The helicopter was delivered to Reach in Mississippi. Cawyer Decl. ¶ 7. Reach is a California corporation with its principal place of business in California and is wholly owned by Defendant Global Medical Response, Inc. (GMR). FAC ¶ 41. After the sale, there were a number of transactions involving the helicopter, including its modification for air ambulance operations. *Id.* ¶¶ 47–51. Neither the Airbus Defendants nor Safran were involved with those modifications.

All four plaintiffs were injured when the helicopter crashed in Christmas Valley, Oregon on May 18, 2022. *Id.* ¶ 7. The crash is alleged to be due, in large part, to the defective design and manufacture of the helicopter by the Airbus Defendants.[3] *Id.* ¶ 203. At the time of the crash, the helicopter was based and operated in Oregon. *Id.* ¶ 190. At some point, a non-Safran or Airbus defendant moved the helicopter wreckage from Oregon to a facility in California. *Id.* ¶ 71.

Safran's role in this case stems from their inspection of the helicopter wreckage in late May or early June 2022. *Id.* ¶ 170 The inspection took place in California without invitation or notice to Plaintiffs or their representatives. *Id.* During this inspection, Plaintiffs claim that Safran intentionally spoliated evidence relevant to the helicopter crash when it took the engine data recorder from the wreckage without proper preservation safeguards. *Id.* ¶ 232. This action

---

[3] The Court reiterates that at this stage, it accepts as true all factual allegations in the FAC.

3 – OPINION AND ORDER

destroyed the original engine data recorder evidence and prohibited Plaintiffs from verifying that the data was not manipulated or modified. *Id.* Similarly, in addition to the products liability claims against them, Plaintiffs allege that the Airbus Defendants engaged in the same spoliation activities with regard to the flight data recorder. *Id.* ¶ 231.

## STANDARD OF REVIEW

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

## DISCUSSION

Because there is no applicable federal statute governing personal jurisdiction, the Court looks to Oregon law. *See* Fed. R. Civ. P. 4(k)(1)(A). Oregon law authorizes personal jurisdiction to the fullest extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To be consistent with due process, a plaintiff must show a defendant has "minimum contacts" with Oregon, such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A court can have personal jurisdiction over a defendant that is either specific or general, depending on the defendant's contacts with the forum state and the nature of the claim. *Schwarzenegger*, 374 F.3d at 801; *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414 (1984). A finding of general jurisdiction requires a defendant's contacts with the forum state be so

4 – OPINION AND ORDER

"continuous and systematic" as to "'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 802 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). And a court with general jurisdiction may require a defendant to answer for any of its activities, even if the cause of action does not arise from the defendant's contacts with the forum state. *Schwarzenegger*, 374 F.3d at 801; *Helicopteros Nacionales de Colombia*, 466 U.S. at 409. Because Plaintiffs argue only that the state of Oregon has specific jurisdiction over Defendant, the court need not address the issue of general jurisdiction. Pls.' Resp. 4, ECF No. 81.

A finding of specific personal jurisdiction requires a defendant to have fewer contacts with the forum state, but only with respect to a narrower class of claims. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). For a court to exercise specific jurisdiction over a defendant, there must be "a connection between the forum and the specific claims at issue." *Bristol-Meyers Squibb Co. v. Superior Court*, 173 S. Ct. 1773, 1781 (2017). For an exercise of jurisdiction to be proper, "minimum contacts" must "proximately result from actions by the defendant *himself*"—not the "unilateral activity of [a plaintiff] or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros Nacionales de Colombia* 466 U.S. at 417. "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). A defendant's contact with the forum state must be *purposeful*, and not merely "random, fortuitous, or attenuated." *Burger King Corp*, 471 U.S. at 475–76.

The Ninth Circuit has established a three-prong test for analyzing whether specific jurisdiction over a defendant is proper:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

5 – OPINION AND ORDER

2) The claim must be one which arises out of or relates to the defendant's forum-related activities;

3) The exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff succeeds . . ., the burden then shifts to the defendant to present 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476–78).

### A. Safran

Courts use different standards to assess the first prong of the specific jurisdiction test depending on the circumstances and the underlying claims. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). In cases where a defendant's alleged intentionally tortious conduct occurs outside the forum state, as here, courts evaluate the first prong using the three-part *Calder* "effects" test. *Schwarzenegger*, 374 F.3d at 803. This test requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

The Court finds that Plaintiffs have not satisfied the requirements of the *Calder* test. Here, Plaintiffs are alleging Safran intentionally spoliated evidence in California—the harm of which Safran knew would likely be suffered by Plaintiffs in Oregon. However, this act was not "expressly aimed" at Oregon.

To determine whether an action is "expressly aimed at the forum state," two factors are considered:

> (1) First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.
>
> (2) Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Morrill*, 873 F.3d at 1143.

Plaintiffs claim that Safran's spoliation activities were specifically aimed at Oregon. Pls.' Resp. at 6. To support this claim, Plaintiffs point to the facts that the helicopter was based in Oregon, operated in Oregon, and crashed in Oregon. *Id.* They argue that removing the engine data recorder from the wreckage without proper preservation safeguards was directed at Oregon because the allegedly spoliated evidence directly relates to events in Oregon and held immense and irreplaceable value to Oregon residents. *Id.* Plaintiffs also claim that the fact that Safran is registered to conduct business in Oregon is further evidence that exercising personal jurisdiction over Safran is appropriate, though they do not cite any case to support that contention. *Id.* at 8.

However, Plaintiffs fail to address the requirement that the relationship between Safran and Oregon arise from contacts that Safran itself created within Oregon. Here, Safran's contacts with Oregon resulted from the activities of the Plaintiffs or other Defendants. That the helicopter was based, operated, and crashed in Oregon has nothing to do with any action taken by Safran. Safran had no hand in the crash itself, nor did Safran play a role in moving the helicopter wreckage from Oregon to California. Safran's role in this case only began after the wreckage had already been transported to California. However significant and extensive the Plaintiffs' contacts with Oregon are, those contacts cannot be attributed to any intentional action of Safran. While the fact that the alleged harm suffered by Plaintiffs due to Safran's actions was felt in Oregon is relevant for the third prong of the *Calder* test, it does not establish that Safran "expressly aimed" its actions at Oregon. Safran's contacts with Oregon are the type of "random, fortuitous, or attenuated" contacts

7 – OPINION AND ORDER

which cannot form the basis for specific personal jurisdiction. Safran's intentional actions were directed at inspecting the engine itself (as opposed to any action towards the state of Oregon specifically). Safran would have had an interest in inspecting the engine no matter what state, or even what country, the helicopter crash occurred in. That the crash happened to occur in Oregon does not automatically compel the conclusion that Safran intentionally directed later inspection actions towards Oregon. Finally, Plaintiffs' reliance on the fact that Safran is registered to conduct business in Oregon is misplaced, as such registration, by itself, cannot form the basis for jurisdiction over a defendant. *Figueroa v. BNSF Ry. Co.*, 390 P.3d 1019, 1029 (Or. 2017).

Because Plaintiffs cannot establish that Safran purposefully directed its activities at Oregon, there is no need for further analysis. This Court does not have personal jurisdiction over Safran, so all claims against it must be dismissed.

## II. Airbus Defendants[4]

The *Calder* effects test analysis for the Airbus Defendants is nearly identical to that of Safran. Instead of removing the engine data recorder, the Airbus Defendants allegedly removed the flight data recording device without proper preservation safeguards. Otherwise, Plaintiffs make identical arguments for why the Airbus Defendants should be subject to personal jurisdiction for alleged spoliation conduct. Pls. Resp. 30–33, ECF No. 79. For the same reasons, which this Court will not repeat here, these arguments fail to meet the requirements of the *Calder* effects test.

However, Plaintiffs also argue that Airbus Defendants should be subject to personal jurisdiction with respect to the underlying product liability and negligence claims for the cause of the helicopter crash and crashworthiness. *Id.* at 6. Because these claims involve products liability, a different standard to assess the first prong of the specific jurisdiction test applies. *J. McIntyre*

---

[4] Because it makes no difference to the analysis, this Court will assume, without deciding, that Airbus Helicopters, Inc. and Airbus Helicopters SAS are a single entity as requested by Plaintiffs.

8 – OPINION AND ORDER

*Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Under this standard, the Court assesses "whether a defendant 'purposefully availed' itself of the laws of the forum state." *Morrill*, 873 F.3d at 1149. The Ninth Circuit has explained as follows:

> [Purposeful availment] exists when a defendant's dealings with a state establishes a "quid pro quo"—where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and in return submits to the burdens of litigation in the State. In other words, we examine whether the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. The unilateral activity of another party does not meet this standard.

*Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154 (9th Cir. 2023) (citations and internal quotation marks omitted). The "mere placement" of a product into a stream of commerce without "something more" does not amount to purposeful availment. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). This is true even if the defendant is aware "that the stream of commerce may or will sweep the product into the forum state." *Id.*

In this case, the Plaintiffs cannot show that the Airbus Defendants purposefully availed themselves of the privilege of conducting activities in Oregon. Though Plaintiffs cite to hundreds of pages of alleged evidence to support their claims, almost none of the cited evidence has any bearing on this issue. Plaintiffs rely heavily on evidence which dates years after—and has no relation to—the sale of the subject helicopter in January 2019. *See* Pls.' Resp. 11–18, ECF No. 79. This evidence is irrelevant to the analysis, as personal jurisdiction can only be based on a "defendant's contacts with a forum at the time of the events underlying the dispute." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (internal quotation marks omitted).

9 – OPINION AND ORDER

Plaintiffs also rely on evidence showing contacts between non-Airbus actors and Oregon. *See* Pls.' Resp. 11–18, ECF No. 79. Again, this evidence is irrelevant, as the unilateral activity of other parties cannot meet the purposeful availment standard. The closest Plaintiffs come to showing a contact between the Airbus Defendants and Oregon is a 2018 website article where Airbus announces the planned sale of helicopters to Reach. Clarke Decl. Ex. L, ECF No. 80. This article mentions that Reach is a subsidiary of GMR, "which provides critical care air transport service to communities throughout California, Oregon, Nevada, Montana, Texas, and Colorado." *Id.* By stretching this evidence to its limit, this could potentially permit an inference that the Airbus Defendants were aware of the possibility that the sold helicopter would eventually arrive in Oregon. However, "mere placement" of the helicopter into the stream of commerce with awareness that it could be swept into Oregon is not enough. *Holland Am.*, 485 F.3d at 459.

Furthermore, Airbus sold and delivered the helicopter in Mississippi to a California company and was not involved in any subsequent transactions related to the helicopter or its modification for air ambulance use. The Airbus Defendants are not registered to conduct business in Oregon, do not maintain offices in Oregon, and do not design, manufacture, assemble, sell, or distribute helicopters or spare parts in Oregon. Besides the 2018 website article, there is no evidence that the Airbus Defendants were even aware that the helicopter would eventually make its way to Oregon. Based on the evidence here, it seems just as likely that the helicopter could have ended up in California, Colorado, or any of the other named states. Without "something more," Plaintiffs cannot show that the Airbus Defendants purposefully availed themselves of the laws of Oregon.

Because Plaintiffs fail to meet this first prong under both the purposeful direction and purposeful availment standards, this Court does not have personal jurisdiction over the Airbus Defendants. All claims against them must be dismissed.

## II. MOTION TO DISMISS SPOLIATION CLAIMS

Defendants GMR, Reach, and Med-Trans move to dismiss Plaintiffs' spoliation claims for failure to state a claim. ECF No. 62.[5] Few states allow standalone claims for "spoliation." Relying entirely on *McGuffin v. Dannels*, No. 6:20-cv-01163-MK, 2021 WL 4453106 (D. Or.), *report and recommendation* adopted, 2021 WL 4449975 (D. Or.), Plaintiffs argue that this Court should conclude Oregon law allows such claims. The Court concludes Plaintiffs face rather massive hurdles with any spoliation claim against the GMR Defendants specifically (and generally against any Defendant). First, the FAC appears allege only that the GMR Defendants "allowed the Starr Companies, which insured the subject helicopter, to arrange for an aircraft salvage company . . . to retrieve the helicopter wreckage from the crash site . . . and transport it to . . . California." FAC ¶ 162. But the Starr Companies are different Defendants, unrelated to the GMR Defendants. And Plaintiffs voluntarily dismissed their claims against the Starr Companies. ECF No. 95. Additionally, it appears much of, if not all, the spoliation alleged here occurred in California or Texas, not Oregon.[6] Plaintiffs do not dispute that neither California nor Texas allow standalone claims for spoliation. Regardless, even assuming Oregon permits a party to bring a standalone claim for spoliation, Plaintiffs' claim is premature.

---

[5] Plaintiffs did not oppose the GMR Defendants' Motion to Dismiss the products liability or negligent claims related to the crash. Pls.' Opp. 1, ECF No. 77. Those claims are DISMISSED, with prejudice.

[6] To be sure, the crash occurred in Oregon. And any injuries Plaintiffs suffered from the crash occurred in Oregon. However, in an attempt to avoid workers compensation immunity, Plaintiffs argue they "were separately injured *after* the crash by the defendants', including Med Trans', negligent and intentional spoliation of evidence[.] The harm suffered by plaintiffs as a result of Med Trans' spoliation of evidence after the crash did not in any way arise out of or occur in the course of their employment." Pls.' Opp. 15.

11 – OPINION AND ORDER

The Oregon Court of Appeals has concluded that a party attempting to bring a standalone claim for spoliation in Oregon must first bring the underlying claim and (1) lose or (2) "suffer diminution in its value." *Classen v. Arete NW, LLC*, 254 Or. App. 216, 222 (2012). That court noted:

> We need not, and do not, address the precise contours of a cognizable claim for spoliation under Oregon law because, by all accounts, plaintiff has not alleged sufficient facts to constitute such a claim. The jurisdictions that recognize an independent claim for spoliation of evidence require the plaintiff to have first brought the underlying claim and lost or suffered diminution in its value. *See, e.g., Kent v. Costruzione Aeronautiche Giovanni Agusta, S.P.A.*, 1990 WL 139414 (E.D. Pa. 1990) ("Not until there is a disposition with respect to the underlying civil action can it be determined whether the destruction of evidence has prejudiced plaintiff."); *Fox v. Choen*, 84 Ill. App. 3d 744, 751, 40 Ill. Dec. 477, 406 N.E 2d 178 (1980) (holding that cause of action for negligent spoliation of evidence is premature until plaintiff actually loses her medical malpractice action due to lost EKG because damages are otherwise "purely speculative and uncertain"); *Federated Mut. v. Litchfield Prec. Co.*, 456 N.W. 2d 434 (Minn. 1990) (resolution of a plaintiff's underlying claim is necessary to demonstrate cognizable injury for purposes of a spoliation action, should such a tort be recognized).
>
> Similarly, Oregon law generally does not permit a party to recover where the causal nexus between the defendant's conduct and the plaintiff's injury is speculative or uncertain. . . . As those principles are pertinent here, no trier of fact reasonably could determine the cause of any alleged damages that plaintiff suffered.

254 Or. App. at 222.

Cases in the District of Oregon have reached the same conclusion; i.e., that even if Oregon law allows a party to bring a standalone claim for "spoliation," such claims are premature pending resolution of the underlying action and the corresponding diminution of value of the underlying claims. *See Jones v. Target Corp.*, 2024 1747326 at *6 (D. Or. Ap. 1, 2024) ("The Court finds the reasoning in *Bliss* and the cases cited therein persuasive. Because Plaintiff has not yet suffered any diminution in the value of his underlying claims, defendant's motion is granted as to plaintiff's spoliation claim."); *see also Melo v. Oregon*, 2016 WL 297430 at *2 (D. Or. 2016) ("Barring the resolution of Melo's other claims in this action, her claim of spoliation against Dr. Fletcher is

12 – OPINION AND ORDER

premature. *See generally Nat'l Interstate Ins. v. Beall Corp.*, 2015 WL 1137440 (D. Or. Mar. 11, 2015) (finding that causation had not been established in a spoliation claim, requiring termination of that claim); *Verd v. I-Flow, LLC*, 2013 WL 2178081 at *5 (D. Or. May 14, 2013) similarly finding spoliation claims premature and dismissing with leave to replead)."; *Bliss v. Adewusi*, 2023 WL 6961979 at *14 (D. Or. 2023) (collecting cases and holding "Even if the spoliation claim is cognizable under Oregon law, Plaintiffs claim is premature. Plaintiffs allege that the spoliation of evidence diminishes the value of their claims in this lawsuit. . . . The Court concludes that Plaintiff's spoliation claim must be dismissed. Oregon courts have not yet recognized the tort, and even if they had, Plaintiffs' claim is premature.").

The Court agrees with the above cases and concludes Plaintiffs' spoliation claims are premature and must be dismissed pending resolution of the underlying claims. The Court agrees with the GMR Defendants:

> Given the unequivocal nature of Plaintiffs' crash-related allegations, it is unknown what Plaintiffs believe caused the crash; what evidence is important to their claims; whether the information they purport to need existed, was spoliated, and/or can be gathered from other sources; and even what forum will end up being the proper place to decide these issues. None of this will be clear until the outcome of the "crash-related" claims are known. Until then, Plaintiffs' claims are incredibly speculative, Plaintiffs have not suffered an injury, and their claims are not ripe. A "spoliation" claim at this stage in the litigation puts the proverbial cart before a horse that may not exist.

GMR Defs.' Reply, 13, ECF No. 82.

In dismissing these claims, the Court is in no way concluding (1) Oregon law allows such independent spoliation claims or (2) the claims here should be analyzed under Oregon law. The Court is merely concluding that the spoliation claims brought at this time are premature. Because

federal courts only deal with active cases or controversies, the spoliation claims must be dismissed.[7]

## CONCLUSION

Defendant Safran Helicopter Engines USA, Inc.'s Motion to Dismiss, ECF No. 60; Defendant Airbus Helicopters, Inc.'s Motion to Dismiss, ECF No. 67; and Defendant Airbus Helicopters SAS's Motion to Dismiss, ECF No. 70, are GRANTED and the claims against those Defendants are dismissed for lack of jurisdiction.

Because Plaintiffs voluntarily dismissed their claims against the Starr Companies, their Motion to Dismiss, ECF No. 73, is DENIED as moot.

Because Plaintiffs' spoliation claims are premature, Defendants Global Medical Response, Inc., Reach Air Medical Services, LLC, and Med-Trans Corporation's Motion to Dismiss, ECF No. 62, is GRANTED.

/ / / /

/ / / /

/ / / /

/ / / /

---

[7] *McGuffin*—the only Oregon case allowing a spoliation claim to proceed under Oregon law—is clearly distinguishable from the facts alleged here. There, after serving nearly a decade in prison, Plaintiff brought malicious prosecution, spoliation, and other claims against officers. Judge Kasubhai distinguished *Classen* (where the Oregon Court of Appeals held any spoliation claim was premature pending resolution of the underlying action) because McGuffin's "spoliation claim, unlike the claims in *Classen* and *Melo*, arises from the same nucleus of facts as the other underlying claims against Defendants." 2021 WL 4453106 at *13. As noted above, however, Plaintiffs acknowledge that their "spoliation claims do not arise out of the helicopter crash." Pls.' Opp. 17. As noted above, the specific acts related to spoliation here appear to have taken place in California or Texas, not Oregon. Therefore, to the extent *McGuffin* accurately states Oregon law with respect to standalone spoliation claims—more specifically, that *Marcum v. Adventist Health System/West*, 215 Or. App. 166, 191 (2007) "recognized the existence of a claim for negligent spoliation of evidence" and that "Oregon law thus allows a claimant to plead a claim for negligent and/or intentional spoliation of evidence," 2021 WL 4453106 at *12—the facts alleged here are clearly distinguishable.

14 – OPINION AND ORDER

The remaining Defendant is Lifeport, LLC. Within 14 days, Plaintiffs and Lifeport shall file a Joint Status Report with proposed deadlines for discovery and dispositive motions.

IT IS SO ORDERED.

DATED this 28th day of January 2025.

                                                _____/s Michael McShane_____
                                                        Michael J. McShane
                                                United States District Judge